UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARQUITA PHILLIPS,

    Plaintiff,

v.                                      Case No. 04-C-330

QUEBECOR WORLD RAI, INC.,

    Defendant.

**DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

### I. BACKGROUND

The plaintiff, Marquita Phillips ("Phillips"), commenced this action by filing a complaint alleging that the defendant, Quebecor World RAI, Inc. ("Quebecor"), terminated her employment in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. Thereafter, the parties filed cross motions for summary judgment. Those motions are now fully briefed and are ready for resolution.

Along with their motions for summary judgment, the parties filed separate proposed findings of fact as well as responses to each other's proposed findings. The following is a summary of the underlying facts, and unless otherwise noted, the facts are unopposed.

Quebecor operates a printing facility in Brookfield, Wisconsin, at which Phillips was employed in the finishing department from May 2000 until February 2004. (Def.'s Proposed Findings of Fact ["DPFOF"] ¶ 1-2) Phillips worked at least 1250 hours in all years relevant to this

lawsuit and at all material times was eligible to take FMLA leave. Furthermore, Phillips was not a "key employee" for purposes of the FMLA. (Pl.'s Proposed Findings of Fact ["PPFOF"] ¶¶ 3-6.)

Employee attendance at the Brookfield facility is governed by the Quebecor World Attendance Policy, a copy of which is provided to all new employees. The attendance policy states that attendance will be considered acceptable until an employee's record of chargeable absences becomes excessive. Missing work, arriving for work late, or leaving work early causes an employee to incur a full or partial chargeable absence. Under Quebecor's policy for habitual absenteeism, an employee with a continuing record of four to seven chargeable absences within a twelve-month period is subject to termination. (DPFOF ¶¶ 3-7.)

Quebecor maintains that absence, lateness, or leaving early due to accident, illness involving immediate hospitalization, emergencies involving the immediate family, and any FMLA-related absence, are not chargeable absences under the policy. (DPFOF ¶ 8.) Phillips denies this and instead claims that the attendance policy does not mention FMLA leave, and in fact she was assessed chargeable attendance points for emergencies relating to herself and her family. (Pl.'s Resp. to DPFOF ¶ 8.)

During the time she worked for Quebecor, Phillips was absent or late from work on at least thirty-three separate occasions.[1] (DPFOF ¶ 9.) Nine of those absences were regarded by Quebecor as non-chargeable. Some of the non-chargeable absences related to Phillips attending to the health care needs of her children. (DPFOF ¶¶ 10-11.)

---

[1] Phillips denies that she was late for work on at least thirty-three occasions. (Pl.'s Resp. to DPFOF ¶ 9.) However, Phillips has not cited any evidentiary material in support of her denial as required by Civil Local Rule 56.2(b)(1). Therefore, the court concludes that this fact is not genuinely in dispute.

On August 1, 2003, Phillips called in sick, resulting in a chargeable absence under the attendance policy. According to Quebecor, that absence represented Phillips' sixth chargeable absence within 12 months. (DPFOF ¶¶ 12-13.) Phillips denies that the absence was her sixth chargeable absence within 12 months. (Pl.'s reply to DPFOF ¶ 13.) Nevertheless, as a result of the August 1, 2003 absence, Phillips received a "final warning" regarding her habitual absenteeism. (DPFOF ¶¶ 12-14.)

From October 1 through October 3, 2003, Phillips was again absent from work for "personal" reasons. This three-day absence was counted by Quebecor as one chargeable absence under the attendance policy. (DPFOF ¶¶ 15-16.) Quebecor asserts that this again gave Phillips six chargeable absences in a 12-month period. Phillips again maintains that the October 1-3 absence did not constitute her sixth chargeable absence. (DPFOF ¶ 16; Pl.'s Resp. to DPFOF ¶ 16.) As a result, Phillips was again issued a written warning. (DPFOF ¶ 17.)

Phillips saw her physician for trouble breathing before work on October 15, 2003, and her physician gave her a prescription for medication and an excuse to be off work from October 15-19, 2003. Despite having an excuse, Phillips went in to try to work on October 15, 2003, and she gave her doctor's excuse to Linda Davis, Quebecor's human resources administrative secretary. (PPFOF ¶¶ 11-12.)

Phillips was unable to finish her shift on October 15, 2003 because of her problems breathing. Phillips notified Ron Lockerman ("Lockerman"), her supervisor, that she was sick and had to leave before the end of her shift. Lockerman did not ask her what her symptoms were or why she felt sick, and he did not ask for any medical documentation. (PPFOF ¶¶ 13-15.) Phillips did not work on October 16 or 17, 2003. (DPFOF ¶ 20.)

Regarding the October 15-17 absence, the doctor's excuse which Phillips provided Quebecor was entitled "School/Work Excuse Form," and stated: "Phillips Marquita was seen at 11:00 AM on 10/15/03 at the Comprehensive Health Center. She may return to work on 10-20-03. Restrictions are as follows: off work 10-15 to 10-19-03." (DPFOF ¶ 21.) Phillips did not provide Quebecor any additional information regarding the October 15-17 absence. (DPFOF ¶ 22.) Neither did Quebecor request any additional information or documentation. (PPFOF ¶ 18.) Quebecor charged Phillips with one absence for this three-day absence, but did not fire her. (DPFOF ¶¶ 19-23.)

Phillips maintains that after her employment was terminated, she found out that her repeated episodes of trouble breathing, including the October 15-17, 2003 absence from work and previous similar episodes, were due to a tumor in her head that was secreting extra hormones throughout her body and making her sick. Phillips claims that the tumor was discovered in May or June of 2004 and she had surgery to remove it on July 30, 2004, which resolved her breathing problems. (PPFOF ¶¶ 21-22; Phillips Dep. at 80.) Quebecor denies the same and argues that Phillips has not provided any evidence that she had a tumor or surgery, or that there was a connection between the alleged tumor and her October 15-17, 2003 absence. (Def.'s Resp. to PPFOF ¶¶ 21-22.)

A month after the October 15-17 absence, Phillips was nearly two hours late for work and was charged with one half of an absence. Less than two weeks later, Phillips received another half of an absence for again being late. (DPFOF ¶¶ 23-24.) Quebecor maintains that at this point Phillips had accumulated seven chargeable absences within the past 12 months. Phillips denies that she had accumulated seven chargeable absences. (DPFOF ¶ 26; Pl.'s Resp. to DPFOF ¶ 26.)

4

On February 11, 2004, Phillips was again absent from work because she had to take her son to the doctor. This absence constituted Phillips' sixth chargeable absence within 12 months. At this point Phillips' employment at Quebecor was terminated. (DPFOF ¶¶ 27-31.)

## II. SUMMARY JUDGMENT STANDARD

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (quoting advisory committee's note to 1963 amendment of Fed. R. Civ. P. 56(e)). "Summary Judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it

5

differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson,* 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995)). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. DISCUSSION

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). A serious health condition is defined as "an illness, injury, impairment, or physical or mental

6

condition that involves-- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611. Furthermore, under the pertinent regulations, "continuing treatment" can mean one of several things. Here, the plaintiff argues that the following definition of "continuing treatment" is applicable:

> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
>> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>>
>> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

Pl.'s Br. at 6; 29 CFR § 825.114(a). The FMLA provides further that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

Aside from the above guarantees (referred to as substantive rights or guarantees), the FMLA also prohibits employers from discriminating against employees for exercising their rights under the FMLA. *See* 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave.").

7

Here, although the complaint alleges that Quebecor discriminated against Phillips by discharging her for exercising her FMLA rights (Compl. at 3), Phillips' claim is properly characterized as substantive and not as a retaliation claim. This is so because the issue is whether or not Phillips was entitled to FMLA leave for the October 15-17, 2003 absence, and not whether Quebecor retaliated against Phillips because she took FMLA leave. After all, nowhere does Phillips argue that Quebecor considered her to have taken FMLA leave on October 15-17, 2003. Therefore, it does not make sense to maintain that she was retaliated against by Quebecor for taking FMLA leave. *See Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 971 (7th Cir. 2000) ("Yet the thrust of [the plaintiff's] claim is substantive; after all, [the defendant] did not think that [the plaintiff] had taken FMLA leave in the first place."). Because Phillips is alleging a deprivation of substantive guarantees provided by the FMLA, she has the burden of demonstrating, by a preponderance of the evidence, entitlement to the disputed leave. *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999).

As recounted above, Phillips' attendance record at the time of her firing contained a number of chargeable absences. However, the only absence that is at issue in this litigation is the absence occurring from October 15-17, 2003. Phillips argues that her October 15-17, 2003 absence was because of a "serious health condition" as defined by the FMLA. Phillips further argues that because Quebecor considered that absence as an attendance point when calculating her attendance record previous to terminating her in February 2004, she was fired in violation of the FMLA. Phillips maintains that there exists no genuine issue of material fact regarding her entitlement to FMLA leave, or the reason for her termination from employment, and that she is therefore entitled to summary judgment.

Quebecor argues that summary judgment in its favor is appropriate because Phillips cannot demonstrate that she suffered from a "serious health condition" at the time of the October 15-17, 2003 absence, and furthermore, that even if Phillips did suffer from a "serious health condition," Quebecor was not put on notice of her need for FMLA leave at that time.

**<u>Serious Health Condition</u>**

The first question which must be resolved is whether or not Phillips suffered from a "serious health condition" as that term is defined by the FMLA and accompanying regulations. Whether or not a person has a "serious health condition" under the FMLA is a question of law. *See Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 499 (7th Cir. 1999). *But see Thorson v. Gemini, Inc.*, 205 F.3d 370, 377 (8th Cir. 2000) (characterizing the question as a mixed question of fact and law). Phillips maintains that her October 15-17, 2003 absence was the result of sickness caused by a tumor in her head which was secreting extra hormones throughout her body, and which required surgery. (Pl.'s Br. Opposing Def.'s Mot. for Summ. J. ["Pl.'s Br.'] at 7.) Phillips admits that she did not find out about this tumor until after she was fired, i.e., after February 11, 2004, and that her surgery occurred on July 30, 2004. (Pl.'s Br. at 7.)

Quebecor's first argument is that Phillips has not provided competent evidence to establish that her condition qualifies as a "serious health condition" because she has not presented any evidence from a doctor or health care provider. In support of this argument, Quebecor cites to *Haefling*, 169 F.3d 494, as well as other cases. The cases cited by Quebecor are distinguishable from the case at hand in the following regard. Whereas those cases deal with medical conditions that at first blush appear doubtful in seriousness (for example, in *Haefling* the condition was a neck injury and in *Bell v. Jewel Food Stores*, 83 F. Supp. 2d 951 (N.D. Ill. 2000), the condition was back pain),

9

in the case at hand, Phillips' alleged condition, a tumor in the head, appears to be the type of condition that would be serious and likely to qualify as such under the definitions contained in the FMLA and accompanying regulations.

This difference is material because in *Haefling* and the other cases cited by Quebecor, the courts were unwilling to rely on the plaintiffs' own testimony that their conditions of doubtful seriousness were in fact serious. The cases do not expressly require the testimony of a doctor to establish that the condition exists, but only its seriousness. Here, the need for a doctor's testimony as to the seriousness of a tumor in the head is less compelling. Although it might not always and everywhere be the case that a tumor in the head is a "serious health condition" under the FMLA, it is likely to be the case. In fact, Phillips claims that she spent approximately three days in the hospital following the surgery. (Phillips Dep. at 81-82.) If this is so, the condition would qualify as "serious" based on the inpatient prong of § 2611. There is seemingly little need for a doctor to testify that a condition is serious under such circumstances.

Nevertheless, for the reasons which follow, it is not necessary for the court to decide whether Phillips would be required to present evidence as to her condition from a doctor, in order to survive summary judgment. The court will assume that at the time when Phillips was diagnosed with and had surgery for her tumor, she was suffering from a "serious health condition." However, Phillips was not diagnosed with the tumor until at least May of 2004, over six months after the October 15-17, 2003 absence. The question which the court must decide is whether or not Phillips was suffering from a "serious health condition" entitling her to FMLA leave when she missed work from October 15-17, 2003. After all, the FMLA sets forth conditions under which an employer must allow an employee to take leave from work. The employer must be able to assess the situation as it is at the

10

time leave is requested, and then by referring to the statute, determine whether or not leave is required. Therefore, the condition must be "serious" at the time when leave is taken or requested, and not at some future date. If this were not the case, employers would never be able to assess whether or not FMLA leave is mandated in a particular case. Any minor illness might later prove to be a symptom of a serious illness or disease, but if the question of whether or not FMLA leave is required is guided by hindsight, rather than how the condition is understood at the time leave is requested or taken, employers would be left with no guidance as to whether or not leave is required by the statute.

Turning then to the issue of whether or not Phillips was suffering from a "serious health condition" as of October 15-17, 2003, as stated above, Phillips must show that her condition involved either (1) inpatient care or (2) continuing treatment by a health care provider. 29 U.S.C. § 2611.

Phillips argues that the court should consider the treatment she received when she had the tumor removed from her head as follow-up treatment to the period of incapacity between October 15-19, 2003. If the court were to do so, then both the inpatient care and the continuing treatment prongs of § 2611 would be satisfied. Phillips would have demonstrated that the illness she was suffering from on October 15-19, 2003 was "serious." Phillips' surgery, however, was on July 30, 2004, over nine months after the October 15-17, 2003 absence, and the record is not clear as to when Phillips next saw a doctor after that absence. Phillips simply states that after her termination (February 11, 2004) she found out that she had a tumor. (Pl.'s Br. at 7.) So, Phillips saw a doctor for symptoms on October 15, 2003, but then did not receive additional treatment for between four and nine months. In my opinion, subsequent treatment that is so attenuated cannot be considered to satisfy the "inpatient care" or "continuing treatment" requirements of § 2611, at least not if there is

11

no showing that such future treatment was contemplated at the time of the original illness. In hindsight, Phillips' sickness in October of 2003 might have been caused by the tumor that was later discovered, but that is not enough to establish that Phillips was entitled to FMLA leave back in October of 2003.

Putting aside then the treatment Phillips received after she was fired, the court will return to the question of whether Phillips has presented enough evidence to establish that her condition was "serious" when she missed work between October 15-17, 2003, i.e., whether at the time of the October 15-17, 2003 absence, the condition Phillips was suffering from involved, or at least contemplated, inpatient care or continuing treatment by a health care provider. Phillips has not provided any evidence showing that she received inpatient care at any time around the October 15-17, 2003 absence, or at any time other than July of 2004. That then leaves the possibility that her condition involved continuing treatment by a health care provider.

Based on the regulations under which she claims her condition qualifies as a serious health condition involving continuing treatment by a health care provider, Phillips' condition must have resulted in a period of incapacity of more than three consecutive days. 29 CFR § 825.114(a)(2). The condition must also have required subsequent treatment involving either: (1) treatment two or more times by a health care provider; or (2) treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment. *Id*. Phillips has provided evidence in the form of a doctor's excuse to miss work from October 15-19, 2003 which tends to show that her condition resulted in a period of incapacity of more than three consecutive days. Phillips has not, however, presented any evidence establishing that she received subsequent treatment for the illness which caused the October 15-17 absence.

12

The only evidence of future treatment which Phillips presents is her own deposition testimony regarding the treatment she received after being fired. Phillips has not presented any evidence showing that she returned to the doctor either soon after her October 15-17 absence or during that absence. Nor does the doctor's excuse for that period disclose that Phillips was directed to return to the doctor. Neither is there any evidence that Phillips missed any subsequent work between October 17, 2003, and February 11, 2004, in order to receive follow-up treatment. The only attendance irregularities in the record between October 17, 2003, and February 11, 2004, consist of two instances of tardiness and one day of missed work which was attributable to Phillips' son's needing to go to the doctor.[2]

Because Phillips has not presented any evidence that she received either inpatient care or continuing treatment by a health care provider at any time around October 15-17, 2003, or that such further care was even contemplated at that time, she has failed to establish that the October 15-17, 2003 absence was because of a "serious health condition" as that term is defined by the FMLA and related regulations. And because Phillips must establish that the absence was because of a "serious health condition" in order prove that she was entitled to FMLA leave, her claim under the FMLA must fail. Quebecor is therefore entitled to summary judgment.

Because of the court's holding regarding whether Phillips has established that she had a "serious health condition," when she missed work from October 15-17, 2003, it is unnecessary to resolve the parties' arguments regarding the notice Quebecor was given. The court simply notes that the question of notice leads back to the question of whether or not the condition was "serious." The

---

[2] Phillips claims that at one point she was rushed to the hospital (Phillips Dep. at 74), but she was not able to remember when this was, and in any event, does not mention it anywhere in her briefs.

13

question of whether or not an employer had adequate notice of an employee's need for FMLA leave only arises when the employee indeed had a condition which would qualify him or her for FMLA leave.

In conclusion and for all of the foregoing reasons, the defendant's motion for summary judgment will be granted and the plaintiff's motion for summary judgment will be denied.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 16th day of August 2005, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge